cal_____

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HARRIETTE KALEY, | ) | Civil No. 04cv0931 (AJB) |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF DECISION AND |
| v. | ) | ORDER |
| | ) | |
| YELLOW CAB COMPANY; MARRIOTT | ) | |
| INTERNATIONAL, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Harriette Kaley, filed this action alleging that she was injured and suffered damages as a result of the negligence of defendants, and each of them, in the incident occurring on January 26, 2003.

Defendants, Yellow Cab Company and Marriott International, Inc., have admitted liability with regard to the subject incident, leaving the issues of causation and damages for the Court's resolution. The parties consented to Judge Battaglia's jurisdiction under 28 U.S.C. § 636(c).

At the time of the incident on January 26, 2003, Dr. Kaley, a self employed psychologist and psychoanalyst, was leaving the Renaissance Marriott Hotel in Los Angeles to visit her two nieces who reside in that city. Dr. Kaley was then going to continue to Los Angeles International Airport for a flight to her home in New York City. Plaintiff left the hotel with her luggage and a taxi cab was hailed for her by a doorman/bellman at that hotel. The cab pulled up and plaintiff began to get into the

1

1 passenger rear seat.  Before she could seat herself, the cab began to pull away.  As a result, plaintiff was

2 pushed forward with the momentum of the vehicle and fell to the ground.  She has described abrasion

3 injuries to her hands, forearms and knees.  The principal residual injury is to plaintiff's right knee for

4 which she sought medical care and treatment and asserts ongoing persistent impairment.

5       The case came on regularly for a bench trial on January 5, 2007.  Stuart F. Gartner, Esq.

6 appeared on behalf of the plaintiff, along with plaintiff Harriette Kaley.  Edward S. Wallace, Esq.

7 appeared on behalf of the defendants.  Based upon defendant's admission of liability, and in light of the

8 indemnity agreement by and between Marriott International, Inc. and Yellow Cab Company, counsel

9 stipulated to the dismissal of Marriott International, Inc.  The dismissal was thereupon granted.

10       After hearing the testimony, reviewing the documentary evidence and agreed facts as set forth in

11 the Pre-Trial Order, and considering the arguments of counsel, the Court now makes the following

12 findings based on the credible evidence and the reasonable inferences to be drawn therefrom.  These

13 findings are made based upon a preponderance of the credible evidence.

**I.**

**FINDINGS OF FACT**

16      1.  Plaintiff, Harriette Kaley, (plaintiff) is a 72 year old woman.  She resides in New York with

17 her husband, and until recently, her adult son.

18      2.  Based upon the United States Department of Labor statistics, plaintiff has an average life

19 expectancy of 14.6 more years.

20      3.  On January 26, 2003, plaintiff was a guest at the Renaissance Marriott Hotel in Los Angeles.

21      4.  On that date, at approximately 9:00 a.m. that morning, plaintiff left the hotel with her luggage

22 and a taxi cab was hailed for her by a doorman/bellman at the hotel.

23      5.  After the cab pulled up, plaintiff began to get into the passenger rear of the cab.  At the time,

24 she was in the process of positioning her body to fully enter the cab and be seated, the cab unexpectedly

25 pulled away from the curb.

26      6.  The plaintiff was pushed forward with the momentum of the vehicle and fell to the ground

27 striking her hands, forearms and knees.  The right leg of her pants, near the knee, had what appeared to

28 be tire marks on them.

///

7.  Plaintiff was evaluated by emergency medical technicians at the scene and was provided first aid.  She thereupon was taken by the Yellow Cab Company supervisor to visit her to nieces in the area briefly, and then on to Los Angeles International Airport for a flight home.

8.  Based upon the stipulation of counsel, defendant Yellow Cab Company accepts tort liability for the incident and damages legally caused by the incident described herein.

9.  Plaintiff was in considerable pain for the remainder of the day on January 26, 2003 in Los Angeles and during her flight home to New York City.

10.  Plaintiff saw her regular orthopaedist, Dr. Goldstein, on January 27, 2003, for the injuries sustained to her arms, hands and knees.

11.  Dr. Goldstein saw the plaintiff again on January 31, 2003 and February 12, 2003, noting the abrasions and continued complaints of pain.  There was tenderness of the patella and posterior tenderness to the medial joint line of the knee, as well as severe pain on flexion and internal rotation. This resulted in a referral for an MRI.

12.  The MRI was performed on February 17, 2003.  The radiologist's report and the MRI films that were entered into evidence confirm a prepatellar bursitis and a "small peripheral corner tear in the medial meniscus at the junction of its posterior horn and body, appearance consistent with focal meniscocapsular separation."

13.  On March 19, 2003, following the MRI, Dr. Goldstein recommended plaintiff perform quadriceps exercises.  He also referred her for therapy, including use of a bike and treadmill.  She was also instructed to use heat and take Vioxx for her symptoms.

14.  Plaintiff was examined by Dr. Pererra, an associate of Dr. Goldstein, on May 23, 2003. After seeing Dr. Pererra, the plaintiff was directed to continue on a course of physical therapy and return for follow up when therapy was completed.

15.  Plaintiff was not reevaluated in Dr. Goldstein's office until March 31, 2004 when she presented with persistent right knee pain and anterior medial pain underneath the patella.

16.  The plaintiff was not seen again by Dr Goldstein until February 7, 2005 with continuing complaints of pain in the right knee, difficulty going up and down stairs, swelling about the knee, and

04cv931

1  sensitivity on the medial side of the knee.  X-rays were negative for bony pathology and surgery was

2  again discussed.  The plaintiff was continued on nonsteroidal anti-inflammatory medication and

3  exercise.

4       17.  Further visits with Dr. Goldstein occurred on August 15, 2005, September 28, 2005,

5  February 24, 2006 and October 9, 2006, respectively.  It is notable that on August 15, 2005, atrophy was

6  noted in the right vastus medialas muscles (one of the four muscles making up the quadriceps), although

7  the patient continued to report performing quadriceps strengthening exercises.  The remaining visits

8  were positive for complaints of continued right knee pain along the interaspect of the right knee on the

9  medial joint line.  By October 9, 2006, crepitus on range of motion with medial joint line tenderness on

10  palpation was noted.  This was the first finding of crepitus in the post-accident evaluations dating back

11  over the three year period since the subject incident.  Surgery was again discussed but deferred by the

12  plaintiff.

13       18.  Dr. Goldstein, opined, on numerous occasions, that the multiple areas of residual scarring,

14  and the permanent injury to the right knee were causally related to the incident of January 26, 2003, but

15  the patient remains symptomatic, albeit doing quadriceps strengthening exercises and taking medication

16  for inflammation and pain relief.  The predominant scarring is a small whitened area at one elbow.

17       19.  Plaintiff also sought medical advice from Dr. Randolph, from whom she had treated with

18  prior to the accident.  Dr. Randolph's evaluations on June 11, July 14, July 30, September 5, 2003 and

19  April 26, 2004, were positive for complaints of right knee pain in consistent fashion to those presented

20  to Dr. Goldstein.  Dr. Randolph also offered conservative management of the injuries and counseled

21  plaintiff and her husband in an exercise regime to address the symptoms.

22       20.  By July 30, 2003, Dr. Randolph counseled plaintiff to gradually resume a weight bearing

23  program and get on with her physical activities.

24       21.  On September 5, 2003, Dr. Randolph notes the MRI findings.  Plaintiff was seen again on

25  April 24, 2004 with continuing problems, and Dr. Randolph was of the opinion that there was not

26  "sufficient change to warrant surgical intrusion."  The plaintiff was advised to use the knee for

27  repetitive, low load exercises and give it time to heal as much as it can.  In fact, she was "counseled

28  rather extensively."  In addition, Dr. Randolph states, "we reviewed her exercise program in quite some

4

detail." Chart notes for visits on November 2, 2005 and October 20, 2006 were admitted as part of Exhibit 8, but are uninterpretable and therefor not meaningful to the Court's findings.

22. Plaintiff was evaluated by Dr. Maurice C. Carter on February 9, 2006 at the request of the defense. Dr. Carter reviewed the medical history and examined plaintiff. Dr. Carter concluded that the tear of the medial meniscus was "possibly" caused at the time of the accident.

23. Dr. Carter also opines that the normal treatment would be arthroscopy if the situation was troubling enough and confirms the etiology of the medial side skin sensitivity as a contusion to the infra patella branch nerve.

24. Plaintiff testified that she is now considering the surgical recommendations made by her doctors, however, the Court agrees with Dr. Randolph's assessment on April 26, 2004, that there is insufficient internal derangement in the knee to warrant surgical intervention, and there has been insufficient change over the course of time since the incident to make that procedure reasonably medically necessary in this case.

25. It is clear from the evidence that despite concerted recommendations by treating physicians for formal physical therapy and a consistent exercise regime, plaintiff has not availed herself of formal physical therapy or home exercise to address the issue of pain. To the contrary, findings by the doctors of atrophy and ultimately crepitus (some three and a half years post incident) support a finding that plaintiff has failed to properly mitigate the impact of her injuries in this case. Dr. Randolph's discussion at the April 24, 2004 visit is telling in this regard, as is Plaintiff's own admission and testimony that she did not proceed with formal physical therapy and was not doing home exercise "systematically." Her description of the exercise she did perform was a seated leg raising, ten repetitions, twice a day. This is in contrast to the recommendations of her doctors who prescribed the use of a bike and treadmill (Goldstein report, March 19, 2003) and repetitive, low impact exercises (Randolph report, April 26, 2004).

26. Plaintiff makes no claim for the medical expenses associated with a required care for her injuries in this case.

27. Plaintiff presents no claim for lost income or loss of economic opportunity.

04cv931

28.  Plaintiff suffered, pain, discomfort, and emotional distress associated with the injury sustained in the incident of January 26, 2003.

29.  The current and ongoing complaints of pain, limitation, and inability to perform normal routine activities are not supported by the object of evidence, and are compromised by plaintiff's failure to mitigate.  Certainly, post incident pain, discomfort, and distress is supported by the objective evidence of injury.  It is notable, however, that active medical care, with Drs. Goldstein and Randolph reduced after  September 2003, with visits thereafter being somewhat annual.  Significant compensation beyond a period of one year from the subject incident given the lack of objective evidence supportive of the level of pain described, would be unreasonable and contrary to law in light of plaintiff's failure to mitigate.

30.  The court finds a reasonable sum for the non-economic damages associated with the subject incident to be $25,000.00.

## II.

## CONCLUSIONS OF LAW

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 636(c), respectively.

2.  Defendant Yellow Cab Company was negligent and the legal cause of the accident involving plaintiff on January 26, 2003.

3.  As a result of the negligence of defendant, as stated above, plaintiff was caused to suffer a small tear of the right medial meniscus, associated abrasions, contusions and bruises, associated with concurrent pain, suffering and emotional distress.

4.  Plaintiff failed to mitigate the effect of the injuries as aforesaid by ignoring the recommendations of her treating physicians for formal physical therapy and failing to perform the home exercise routine and regime as directed by her doctors.

5.  The Court finds the appropriate amount for non-economic damages associated with the injuries legally caused by defendant to be $25,000.00.

04cv931

## III.

## CONCLUSION AND ORDER

Based on the foregoing finds of fact and conclusions of law the court orders as follows:

1.  Plaintiff shall recover $25,000 in compensation for the non-economic damages associated with the incident of January 26, 2003.

2.  The Clerk of Court shall enter judgment consistent with this Order.


IT IS SO ORDERED.


DATED:  January 22, 2007

_____
Hon. Anthony J. Battaglia
U.S. Magistrate Judge
United States District Court

04cv931